# CONFIDENTIAL SETTLEMENT AGREEMENT
# AND MUTUAL GENERAL RELEASE

This Confidential Settlement Agreement and Mutual General Release ("Agreement") is entered into by and between Mileydis Sanchez (hereinafter "Plaintiff") and Developmental Therapies and Beyond LLC and Jused Melian, and their officers, directors, insurers, and agents (hereinafter "Defendants"); who are collectively referred to as "the Parties".

**Whereas**, Plaintiff filed a lawsuit in the District Court for the Southern District of Florida to recover allegedly outstanding and unpaid/underpaid overtime wages, penalties, attorneys' fees and costs from the Defendants pursuant to the Fair Labor Standards Act, 29 U.S.C. §201, *et. seq*, and Florida law in *Mileydis Sanchez v. Developmental Therapies and Beyond LLC and Jused Melian*, presently pending in the Southern District of Florida with Case No.: 0:25-CV-60980-AUGUSTIN-BIRCH ("the Lawsuit").

**Whereas,** to avoid the uncertainties of litigation, the Parties desire to enter into a mutually binding agreement to resolve the Lawsuit and any and all claims they could have brought in the Lawsuit on the terms and conditions set forth in more detail in the ensuing paragraphs.

**NOW THEREFORE**, in consideration of the mutual promises and covenants contained herein, the Parties agree to the following Terms and Conditions:

## Terms and Conditions

1. **No Admissions.** This Agreement does not constitute an admission of a violation of any law, order, regulation, or enactment, nor any wrongdoing by the Defendants, which is expressly denied.

2. **Consideration.** The Parties agree to resolve Plaintiff's claims for unpaid/underpaid wages, penalties, attorneys' fees and costs by the Defendants' payment of the gross amount of FIVE THOUSAND DOLLARS $5,000.00, which includes $2,000 payable to Plaintiff AND $3,000.00 in costs and fees payable to Plaintiff's counsel (hereinafter "Settlement Fund"). Defendants shall pay the Settlement Fund as follows:

    a. One check in the gross amount of $1,000.00 to Mileydis Sanchez as alleged unpaid/underpaid overtime wages for which a W-2 shall issue to Plaintiff;

    b. One check for $1,000.00 to Mileydis Sanchez for alleged liquidated damages, for which a 1099 shall issue to Plaintiff; and

    c. One check for $3,000 representing the attorneys' fees and costs due to Plaintiff and payable to FairLaw Firm as Plaintiff's counsel, for which a 1099 shall issue to FairLaw Firm.

    d. Plaintiff agrees to the division of the Settlement Fund, as set forth above.

3. **Delivery.** Defendants shall deliver each check issued towards payment of the Settlement

Fund to FairLaw Firm, located at 135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146, by July 26, 2025. Either Defendant can make payments toward the Settlement Fund; however, Defendants are jointly and severally liable for payment of the Settlement Fund and all checks issued towards it. The parties shall cooperate to obtain the prompt approval of this Agreement and/or the dismissal of the Lawsuit. FairLaw Firm will hold the Settlement Funds in escrow and will not disburse them to the Plaintiff or Plaintiff's counsel until the Court enters an Order approving this Agreement and/or dismissing the Lawsuit.

4. **Tax Treatment.** Defendants will report payment of the Settlement Fund to the IRS as required by law. Plaintiff has not relied on any statements or representations by Plaintiff's counsel, Defendants, or Defendants' counsel with respect to the tax treatment of the Settlement Fund. Plaintiff is responsible for paying her share of all federal, state, and local taxes that Plaintiff may owe by virtue of the receipt of any portion of the monetary payment provided under this Agreement. Plaintiff agrees to indemnify and hold Defendants harmless from any liability, including, without limitation, all penalties, interest and other costs that may be imposed on Plaintiff by the Internal Revenue Service or other governmental agencies for failing to timely pay her share of any tax obligations that may arise from the monetary consideration made to Plaintiff under this Agreement.

5. **Default Provisions.** Defendants shall be entitled to receive email notice of any other default in payment under the Agreement, which shall be sent to Defendants' counsel of record in the Lawsuit. If the Defendants fail to cure the continuing default in payment within 5 days of their counsel of record in the Lawsuit receiving email notice, the Plaintiff shall be entitled to entry of a Default Final Judgment against the Defendants, jointly and severally, in the amount of $7,500 minus all payments made successfully and timely. These remedies are in addition to all other remedies available to the Plaintiff. Defendants waive all defenses to the entry of a Default Final Judgment other than the Plaintiff's failure to provide the notice required under this Agreement and/or timely payment.

6. **Mutual General Releases.** The Parties generally release, waive, satisfy, and forever discharge one another from any and all claims, demands, or liabilities whatsoever, whether known or unknown, which Plaintiff or Defendants ever had or may now have against one another from the beginning of time to the date this Agreement is executed, except for the obligations Defendants undertake in this Agreement. This release includes, without limitation, any claims, demands, or liabilities relating to or arising out of Plaintiff's employment with Defendants and separation of employment with Defendants pursuant to any federal, state, or local employment laws, regulations, ordinances, or executive orders prohibiting, among other things, age, race, color, sex, national origin, religion, marital status, familial status, sexual orientation, and disability discrimination. The Parties acknowledge that they may later discover facts that are different from or in addition to those currently known or believed to be true regarding any or all matters covered by this Agreement, and the Parties agree that this Agreement shall nonetheless remain in full and complete force and effect.

7. **Release Exclusions.** The Mutual General Release excludes any Party's right to enforce this Agreement, as well as any claims that cannot be waived by law, to defense and indemnity, or liability insurance coverage. This exclusion includes any claims by the Plaintiff for unemployment

or workers' compensation benefits, any rights to COBRA benefits, or vested retirement benefits. Nothing in this Agreement limits the Plaintiff's rights to file a claim, provide information, or participate in an investigation or proceeding with a government agency, such as the U.S. Securities and Exchange Commission (SEC), the Equal Employment Opportunity Commission (EEOC), or the Occupational Safety and Health Administration (OSHA) under any applicable law protecting such rights. However, the Plaintiff gives up the right to any money or other personal benefits from any Defendant (not a government agency) for any such claim or litigation, whether brought by the Plaintiff or on the Plaintiff's behalf, unless prohibited by law.

**8.     Confidentiality.** Plaintiff and Defendants agree that all matters related to this Agreement, including the negotiations preceding it, are STRICTLY CONFIDENTIAL. They further agree that they, along with their attorneys, spouses, and representatives, will not publicize, disclose, or share any information regarding the terms of this Agreement, the content of the negotiations and discussions regarding this Agreement, or the settlement of this matter, with any third party or entity. They expressly agree that they cannot disclose or disseminate this Agreement or any information about it to the print or broadcast media, any internet communication outlet, or to individuals whom they know or have reason to suspect are past or present employees, contractors, customers, or vendors of the Defendants. Nothing in this Agreement shall prevent Plaintiff from providing her counsel with a review on social media or the internet, provided she does not disclose the parties to the suit and maintains the confidentiality of the terms of this Agreement.

**9.     Permitted Disclosures.** Notwithstanding the foregoing, Plaintiff and Defendants may disclose this Agreement and its terms under the following conditions: (i) to Plaintiff's attorney(s), accountant(s), tax preparers, and the Internal Revenue Service (IRS), including the amounts received through this Agreement; (ii) upon inquiry from federal regulatory authorities, law enforcement, the Department of Labor, the Department of Justice, the National Labor Relations Board; and (iv) if subpoenaed by a party to a lawsuit, ordered by the Court, or otherwise legally compelled.

**10.    Non-Disparagement.** The Parties agree not to do or say anything, verbally or in writing, directly or indirectly, that disparages, reflects negatively on, incites individuals to file claims against, or otherwise detrimentally affects each other. This non-disparagement provision explicitly prohibits posting comments, remarks, videos, or reviews about any Party on social media platforms, including but not limited to Glassdoor, Indeed, Facebook, Yelp, Instagram, X, TikTok, or other social media, career, or messaging platforms.

**11.    Confidentiality and Non-Disparagement Exclusions.** Nothing in this Agreement, including its confidentiality and non-disparagement provisions above and the release and waiver of claims, is intended to limit Claimant's alleged rights to engage in protected, concerted activity under Section 7 of the National Labor Relations Act ("NLRA") or to file a charge with, participate in any investigation by or testify in any proceeding before the National Labor Relations Board.  This means, for example, that nothing in this Agreement prohibits Plaintiff from speaking with co-workers or third parties about pay, hours, or terms and conditions of alleged employment or from engaging in other protected, concerted activities under the NLRA. Plaintiff waives any right to monetary or other relief, including reinstatement, which may be

ordered by the NLRB as a result of or in connection with such charge, investigation, or proceeding.

**12.     Neutral Employment Reference.** Upon inquiry, Defendants shall provide a neutral employment reference and verify Plaintiff's dates of work, position(s) held, and rate(s) of pay without referencing any demand letter, lawsuit, claim(s) asserted therein, or the resolution of such claims. The Parties shall not make any disparaging statements about one another since executing this Agreement. If any Party published or made disparaging statements about any other Party before signing this Agreement (a) on the internet or (b) on any social media platform, the Party shall delete, take down, and/or remove each within five (5) business days of Defendants' receipt of this Agreement signed by Plaintiff.

**13.     Construction and Modification.** The Parties acknowledge that each had the opportunity to have this document reviewed by counsel selected by each Party, who had the opportunity to negotiate and revise the Agreement. The normal rules of contract construction regarding ambiguities being resolved against the drafting party shall not be employed when interpreting this Agreement, as the Parties are jointly responsible for and participated in drafting this Agreement. This Agreement constitutes the entire, complete, and integrated statement of each and every term and provision agreed to by and between Plaintiff and Defendants related to release of claims involving the Parties. All prior negotiations, representations, and discussions are merged into and superseded by this Agreement. No Party has relied on any representations or statements made by the other Party hereto that are not specifically set forth in this Agreement. This Agreement may not be changed except in a writing that is signed by all Parties and then approved by the Court.

**14.     Enforcement.** The parties agree that the substantive law of the State of Florida governs this Agreement, and that jurisdiction over this matter shall be in the United States District Court for the Southern District of Florida, which is presiding over the Lawsuit. If the Court invalidates any provision of this Agreement, all remaining provisions shall remain in full force and effect, provided that both parties may still effectively rely on them. The prevailing party in any claim arising from or relating to this Agreement shall be entitled to recover all attorneys' fees and costs incurred.

**15.     Execution.** This Agreement may be executed in printed or electronic form, which shall be equally binding. This Agreement may be executed in any number of counterparts and by the different Parties hereto in separate counterparts, with the same effect as if all Parties had signed the same document. All such counterparts shall be deemed an original, construed together, and constitute one and the same instrument. A copy or electronic version of this Agreement shall be considered the same as an original for all purposes.

**16.     Authorization and Representations.** Defendants represent and warrant that the person signing this Agreement has the authority to not only bind himself/herself to this Agreement, but also to bind Defendants and all who may claim through Defendants to this Agreement. The Parties warrant and represent that there are no liens or claims of lien or assignments in law or equity or otherwise of or against any of the claims or causes of action released by this Agreement, and that no claim released was previously transferred or assigned. The Parties warrant that they

are not aware of any attorneys' liens placed on this matter. The Parties represent that they have each read and understood this Agreement, or that it has been translated for them, and that they fully understood its contents, terms, and conditions before signing.

**IN WITNESS WHEREOF**, the undersigned Parties have executed this Agreement as of the dates set forth below, willingly and freely.

*Mileydis Sanchez*

By: _Mileydis Sanchez (Jul 1, 2025 17:03 EDT)_
    *Mileydis Sanchez*

Date: 07/01/25

*Developmental Therapies and Beyond LLC*

By: _Jused Melian_
    As Its Authorized Agent
Print Name: Jused Melian

Jused Melian
By: _____
    Jused Melian

Date: 7/1/25